IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TIFFANY HAYNES,

    PLAINTIFF.

VS.                            CIV. ACT. NO.:

DRAYER PHYSICAL THERAPY
INSTITUTE, INC.,

    DEFENDANT                JURY TRIAL DEMANDED

## COMPLAINT

## I.   JURISDICTION

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1334(4), 1343(4), 2201, 2202 and 29 U.S.C. § 2617(a)(2).  This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 28 U.S.C. § 2601, *et. seq.* ("FMLA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA).  The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

2.    Plaintiff timely filed her charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last

1

discriminatory act (Exhibit A).  Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II.   PARTIES

3.      Plaintiff, Tiffany Haynes (hereinafter "Plaintiff"), is a resident of Birmingham, Jefferson County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Southern Division.

4.      Defendant, Drayer Physical Therapy Institute, Inc., (hereinafter "Defendant") is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).  Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.  Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

## III.   STATEMENT OF FACTS

5.      Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 3 above.

6.      On or about July 25, 2011, Plaintiff began work with Defendant.

7.      Defendant employed Plaintiff as a Medical Biller.

2

8.     At all times while employed with Defendant, Plaintiff performed her job duties in a competent or better manner.

9.     In 2016, Plaintiff was diagnosed with Scleroderma, an auto-immune disease that affects internal organs, including heart, circulation, and gastro-intestinal functions.

10.     Plaintiff suffers from the physical and/or sensory impairment of Scleroderma.

11.     Plaintiff's Scleroderma affects her such that the major life activities of performing manual tasks such as, seeing, eating, walking, sleeping, standing, lifting, bending, breathing, concentrating, thinking, communicating and/or working are substantially limited as compared to the average person in the general population.

12.     Plaintiff was also diagnosed with systemic Lupus, interstitial lung disease, and severe Raynaud's Syndrome.

13.     Plaintiff suffers from the physical and/or sensory impairment of systemic Lupus, interstitial lung disease, and severe Raynaud's Syndrome.

14.     Plaintiff's systemic Lupus, interstitial lung disease, and severe Raynaud's Syndrome affect her such that the major life activities of performing manual tasks, seeing, eating, walking, sleeping, standing, lifting, bending, breathing,

3

concentrating, thinking, communicating and/or working are substantially limited as compared to the average person in the general population.

15.     Plaintiff was qualified for the position of Medical Biller with or without a reasonable accommodation of her disability.

16.     Defendant employed Nicole Butts.

17.     Butts worked as Plaintiff's supervisor.

18.     Defendant employed Theda Heath.

19.     Heath worked for Defendant in a Human Resources capacity.

20.     Plaintiff reported her medical diagnoses to Butts and also to Heath.

21.     In January 2016, Plaintiff sought, and Defendant approved, FMLA leave for a one week stay in the hospital along with a week of recovery due to a tear in Plaintiff's esophagus that was related to her disabilities.

22.     On October 2, 2016, Plaintiff's doctor referred her to a specialist.

23.     The specialist certified Plaintiff's intermittent FMLA leave and delivered the paperwork to Defendant on Plaintiff's behalf.

24.     The FMLA certification certified intermittent leave both for the upcoming year, as well as for dates in which the specialist saw the Plaintiff.

25.     On October 3, 2016, the day after Defendant received Plaintiff's FMLA

paperwork, Butts and Janet (LNU) in HR told Plaintiff that Defendant was terminating her employment for absences because they had "waited long enough" on the FMLA paperwork.

26.    When Plaintiff had to miss days for her disability in 2016, Plaintiff delivered a doctor's excuse to Defendant for virtually every time she missed work.

27.    Butts required/requested that Plaintiff work through lunch, after hours, and on weekends to make up for any time that she missed.

28.    Butts told Plaintiff that she was a hard worker and performed her job duties competently.

29.    In fact, Plaintiff turned out more work than most of her co-workers.

30.    As of the date of her termination of employment on October 3, 2016, Plaintiff was fully caught up with her work.

31.    Defendant never engaged in the interactive process of attempting to accommodate Plaintiff's disability in order to allow her to continue her job even though Butts required Plaintiff to work hours to make up for any absences and she was completely caught up with her work at the time Defendant terminated her employment.

32.    Had Plaintiff been allowed to continue to work, Plaintiff could have

continued to perform the essential functions of her job as she had throughout her employment with Defendant, but Defendant's decision to terminate Plaintiff's employment without attempting to accommodate her disability was a violation of the Americans with Disabilities Act.

33.    When she was hired, Defendant paid Plaintiff $14 per hour, while other new hires who were not disabled were hired to perform the same type work of medical billing that Plaintiff performed for Defendant at $15 per hour.

34.    Defendant paid the following new employees a higher rate of pay than the Plaintiff:  Sabrina Dozier, Angela Walker, Nicole Fitzgerald, Tonya Brooks, Angelica Brumbley, and Jessica George.

35.    Defendant terminated Plaintiff's employment on October 3, 2016.

36.    As of the date of Plaintiff's termination, Plaintiff held the position of Medical Biller.

IV.    **COUNT ONE - FMLA INTERFERENCE**

37.    Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 36 above as if fully set forth herein.

38.    During the 12-month period prior to October 2, 2016 Defendant employed Plaintiff for at least 1,250 hours of service.

6

39.     Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's October 2, 2016 leave.

40.     During the week of October 2, 2016, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

41.     In January 2016, Plaintiff sought, and Defendant approved, FMLA leave for a one week stay in the hospital along with a week of recovery due to a tear in Plaintiff's esophagus that was related to her disabilities.

42.     On October 2, 2016, Plaintiff's primary care physician referred her to a specialist.

43.     The specialist certified Plaintiff's intermittent FMLA leave and delivered the paperwork to Defendant on Plaintiff's behalf.

44.     The FMLA certification certified intermittent leave both for the upcoming year, as well as for dates in which the specialist saw the Plaintiff.

45.     On October 3, 2016, the day after Defendant received Plaintiff's FMLA paperwork, Butts and Janet (LNU) in HR told Plaintiff that Defendant was terminating her employment for absences because they had "waited long enough" on the FMLA paperwork.

46.     Defendant interfered with Plaintiff's FMLA rights by not allowing Plaintiff to commence the exercise of intermittent FMLA leave.

47.     Defendant's employees had knowledge that Plaintiff suffered from an FMLA qualifying condition for which she needed treatment through a specialist from January 2016 through October 2, 2016 from various doctors.

48.     As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

V.     **COUNT TWO - FMLA RETALIATION**

49.     Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 48 above as if fully set forth herein.

50.     During the 12-month period prior to October 2, 2016 Defendant employed Plaintiff for at least 1,250 hours of service.

51.     Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's October 2, 2016 leave.

52.     During the week of October 2, 2016, Defendant employed fifty or more employees, working within 75 miles of the location where Plaintiff worked.

53.     In January 2016, Plaintiff sought, and Defendant approved, FMLA

8

leave for a one week stay in the hospital along with a week of recovery due to a tear in Plaintiff's esophagus that was related to her disabilities.

54.     On October 2, 2016, Plaintiff's doctor referred her to a specialist.

55.     The special certified Plaintiff's intermittent FMLA and delivered the paperwork to Defendant on Plaintiff's behalf.

56.     The FMLA certification certified intermittent both for the upcoming year, as well as for dates in which the specialist saw the Plaintiff.

57.     On October 3, 2016, the day after Defendant received Plaintiff's FMLA paperwork, Butts and Janet (LNU) in HR told Plaintiff that Defendant was terminating her employment for absences because they had "waited long enough" on the FMLA paperwork.

58.     Defendant interfered with Plaintiff's FMLA rights by not allowing Plaintiff to commence the exercise of intermittent FMLA leave.

59.     Defendant's employees had knowledge that Plaintiff suffered from an FMLA qualifying condition for which she needed treatment through her doctor from January 2016 through October 2, 2016 from various doctors.

60.     Plaintiff provided notice of her FMLA leave on October 2, 2016.

61.     Plaintiff provided notice of her need for FMLA leave to Butts and Janet

(LNU) that Defendant employed in its HR Department

62.     Defendant's Butts and Janet (LNU) in HR informed Plaintiff that Defendant terminated her employment.

63.     Defendant's Butts and Janet (LNU) in HR made the decision to terminate Plaintiff's employment.

64.     As a result of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VI.   COUNT THREE - ADA - Discrimination

65.     Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 63 above as if fully set forth herein.

66.     In 2016, Plaintiff was diagnosed with Scleroderma, an auto-immune disease that effects internal organs, including heart, circulation, and gastro-intestinal functions.

67.     Plaintiff suffers from the physical and/or sensory impairment of Scleroderma.

68.     Plaintiff's Scleroderma affects her such that the major life activities of performing manual tasks, seeing, eating, walking, sleeping, standing, lifting,

bending, breathing, concentrating, thinking, communicating and/or working are substantially limited as compared to the average person in the general population.

69.   Plaintiff was also diagnosed with systemic Lupus, interstitial lung disease, and severe Raynaud's Syndrome.

70.   Plaintiff suffers from the physical and/or sensory impairment of systemic Lupus, interstitial lung disease, and severe Raynaud's Syndrome.

71.   Plaintiff's systemic Lupus, interstitial lung disease, and severe Raynaud's Syndrome affect her such that the major life activities of of performing manual tasks, seeing, eating, walking, sleeping, standing, lifting, bending, breathing, concentrating, thinking, communicating and/or working are substantially limited as compared to the average person in the general population.

72.   When she was hired, Defendant paid Plaintiff $14 per hour, while other new hires who were not disabled, were hired to perform the same type work of medical billing that Plaintiff performed for Defendant for $15 per hour.

73.   Defendant paid the following new employees a higher rate of pay than the Plaintiff:  Sabrina Dozier, Angela Walker, Nicole Fitzgerald, Tonya Brooks, Angelica Brumbley, and Jessica George.

74.   In January 2016, Plaintiff sought, and Defendant approved, FMLA

leave for a one week stay in the hospital along with a week of recovery due to a tear in Plaintiff's esophagus that was related to her disabilities.

75.     On October 2, 2016, Plaintiff's doctor referred her to a specialist.

76.     The special certified Plaintiff's intermittent FMLA and delivered the paperwork to Defendant on Plaintiff's behalf.

77.     The FMLA certification certified intermittent both for the upcoming year, as well as for dates in which the specialist saw the Plaintiff.

78.     On October 3, 2016, the day after Defendant received Plaintiff's FMLA paperwork, Butts and Janet (LNU) in HR told Plaintiff that Defendant was terminating her employment for absences because they had "waited long enough" on the FMLA paperwork.

79.     Defendant was substantially motivated by Plaintiff's disability and continuing need for healthcare in making the decision to terminate Plaintiff's employment.

80.     As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VII.   PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for the

following relief:

A.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Family Medical Leave Act and the ADA;

B.    Enter an Order requiring the Defendant to make Plaintiff whole by awarding her reinstatement to the position she would have had, had she not been terminated; and,

C.    Award Plaintiff back pay, together with employment benefits, front pay, nominal damages, special damages, liquidated damages, compensatory damages, punitive damages, attorneys' fees and costs, and any additional relief as may be determined by the Court to which Plaintiff is entitled.


_____
ALLEN D. ARNOLD

_____
KIRA FONTENEAU

OF COUNSEL:

FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
(205) 252-1550 – Office
(205) 502-4476 – Facsimile

## PLAINTIFF REQUESTS TRIAL BY STRUCK JURY

OF COUNSEL

DEFENDANT'S ADDRESS:
Drayer Physical Therapy Institute, LLC.
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104